**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**JOHNNY D. CHAFFIN** **PLAINTIFF**

**v.** **4:06CV00466-WRW**

**JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION**[1] **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Plaintiff brings this action under sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), as amended, for judicial review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance (SSD) benefits under Title II and for Supplemental Security Income (SSI) benefits under Title XVI of the Act, 42 U.S.C. §§ 416(I), 423, 1381-1382c. Both parties have submitted briefs, and the case is ready for disposition.

**I. Procedural Background**

Plaintiff filed applications for SSD and SSI benefits on December 29, 2003.[2] Plaintiff alleged that he became disabled on October 13, 2001, and was unable to work because of back problems and arthritis.[3] His claims were denied initially and upon reconsideration.[4] At Plaintiff's request, a hearing was conducted by the Administrative Law Judge (ALJ) on April 14, 2005.

[1]Michael J. Astrue was sworn in as Commissioner of the Social Security on February 12, 2007. He, therefore, is substituted for Jo Anne B. Barnhart under Fed. R. Civ. P. 25(d)(1).

[2]Tr. 43-45, 148B-D.

[3]Tr. 12, 148A.

[4]Tr. 25-26, 31-33, 148G.

Plaintiff and his wife, Penny Chaffin, both testified.[5] The ALJ submitted written interrogatories to a vocational expert (VE), Floyd John Massey, who provided responses on May 16, 2005.[6] On August 2, 2005, the ALJ issued a decision denying Plaintiff's claim for benefits.[7] After receiving a brief from Plaintiff's counsel,[8] the Appeals Council, on February 9, 2006, denied Plaintiff's request for review, making it the final decision of the Commissioner.[9] It is from this decision that Plaintiff seeks judicial review.

**II. Hearing Testimony**

Plaintiff was born on December 18, 1972.[10] He attended the tenth grade, received a GED five years later, and can read and write.[11] Plaintiff has past relevant work (PRW) experience in construction, as a general laborer, carpenter, diesel mechanic, machine operator, and salvage yard mechanic.[12]

He testified that as a result of busting concrete with a sledge hammer in the latter part of 2003, he hurt his back and saw his regular doctor, Dr. Chris Horan, who sent Plaintiff to St. Mary's

---

[5]Tr. 154-183.

[6]Tr. 111-115.

[7]Tr. 8-18.

[8]Tr. 149-153.

[9]Tr. 3-6.

[10]Tr. 158.

[11]Tr. 159, 166.

[12]Tr. 159-165.

Hospital for an MRI of his spine which revealed herniated and protruding discs.[13] Plaintiff stated that the injury is located in his lower back, causing pain in his tail bone and hip area.[14] He also stated that, although he had injured his back in the summer of 2002 when he and his wife were picking up a dog house, he just worked with the pain doing light-duty work until he got hurt in 2003.[15]

He further testified that the doctors told him that they could not do anything for his back, but recommend pain management as he had heard negative stories about epidural shots. Plaintiff asserted that, while the massage of the TENS unit felt good, it really did not take away the pain and he could not afford to make the payments on it.[16]

Plaintiff described a typical day as feeding the cat and dog, checking the mail, and lying down in an easy chair until his wife returns from work after 2:00 p.m.[17] He usually microwaves his meals.[18] When asked about chores, Plaintiff stated that he's never done the dishes; picking up baskets of laundry hurts his back; he tries to do a little yard work by using the riding mower until

---

[13]Tr. 161-162.

[14]Tr. 162.

[15]Tr. 164.

[16]Tr. 165-166.

[17]Tr. 166.

[18]Tr. 167.

his back starts hurting around 20 or 30 minutes; and he can no longer use a weedeater or pushmower.[19] He drives some, although it hurts his back to sit up.[20]

Plaintiff described his pain as around the top of the hipbone or around the pelvis area. He testified that it usually feels like he needs to use the bathroom with a kind of pain down in the tail bone while sometimes it is pins and needles down his legs with numbness at least once a week mainly in the right leg, and sometimes the pain feels like a toothache in his lower back.[21] He stated that he had been prescribed pain pills and muscle relaxers, which don't do much for him.[22] Plaintiff then explained that, the day before, Dr. Horan had prescribed a new pain medication, Tramadol, which he had taken twice.[23]

Plaintiff testified that he will ride with his wife and sit in the truck while she grocery shops, and he plays video games for about a half-hour every other weekend with his son although he no longer does hobbies.[24] He sits in a recliner during the day so he can lie back or sit up when he hurts.[25] Plaintiff also testified that he gets ganglion cysts on his wrists which swell mainly on the right hand and affects his grip, usually in the morning, so he has to wait an hour or two to avoid

---

[19]Id.

[20]Tr. 167-168.

[21]Tr. 168.

[22]Tr. 168-170.

[23]Tr. 169-170.

[24]Tr. 170-171, 176.

[25]Tr. 171.

dropping "stuff" and recently was unable to turn a wrench.[26] He admitted that he felt depressed because he could not play ball with his nine year old son.[27]

Plaintiff repeated that it feels like he has to use the bathroom a lot and spends a lot of time there as it is the most comfortable seat since it does not put pressure on his spine.[28] He testified that he sleeps only a couple of hours each night because of back pain and depression.[29] Plaintiff walks about fifty feet to the mailbox, but does not stay on his feet very long due to his legs feeling weak.[30]

The ALJ noted that Plaintiff's application reflected that he used crutches, but he was not using them at the hearing. Plaintiff explained that he had the crutches from when a trailer had fallen on his leg, and that, while they helped take the pressure off his lower spine at first, they were too clumsy to try to carry and he usually did not walk far enough to need them.[31]

Plaintiff's wife testified they had been married for seven years and he no longer takes the kids to the park, rides around, or dances.[32] She stated that Plaintiff legs shake "real bad," he yells out in pain and grabs his back, and she sometimes has to hold him to keep him from falling, which he has done several times.[33] To assist with Plaintiff's pain, his wife recently leveled the gravel in

---

[26]Tr. 172.

[27]Tr. 173.

[28]Id.

[29]Tr. 173-174.

[30]Tr. 174.

[31]Tr. 175.

[32]Tr. 176-177.

[33]Tr. 177-178.

the driveway, waters and feeds the cat and dog when she is home, helps him take off his pants since he cannot bend over to take the pant legs off his feet, and sometimes helps him get out of the tub because he cannot lift his leg high enough.[34] She confirmed his inability to shop, his driving, and his sleep habits.[35] Penny Chaffin testified that Plaintiff had not seen a doctor in quite a while because they could not afford it. She also state that Plaintiff is often in a bad mood.[36]

**III. Summary of Evidence in Record**

Plaintiff saw Dr. Horan on December 2, 2003 and complained of re-injuring an old lumbar back problem a week ago that was keeping him from working.[37] The examination revealed positive lag raises bilaterally, negative LS spine, normal reflexes Patellar and Achilles. Dr. Horan prescribed Naprosyn and Flexeril for two weeks and a possible MRI if Plaintiff was not better.[38] On December 13, 2003, Dr. Horan referred Plaintiff for an MRI and prescribed Tylenol 3.[39] The MRI of the thoracic spine showed an old mild anterior wedge deformity of T8 body, with no retropulsed fragments and no disc herniation, or other apparent significant abnormalities. The lumber spine showed a right herniation and protrusion at L4 with slight protrusion across the left side of the midline, but with the preponderance centrally and right paracentrally, no apparent sequestered fragment, an acute annular tear centrally and right paracentrally at L5 in association with a slight

[34]Tr. 178-179.

[35]Tr. 179-180.

[36]Tr. 181.

[37]Tr. 119.

[38]Id.

[39]Id.

central and posterior lateral right disc protrusion. There was no evidence of a sequestered fragment.[40] Plaintiff was admitted to St. Mary's Regional Medical Center's emergency room in Russellville on June 22, 2003, for a severe toothache.[41]

Dr. Horan had Plaintiff see Dr. Scott Schlesinger at the Arkansas Neurosurgery Clinic in Little Rock on January 5, 2004.[42] Plaintiff reported that he had several years of low back and thoracic pain; walking, standing and sitting made the pain worse; the pain had gotten worse in the past year and his legs give out on him with certain movements; marked impairment of movement of his spine; awakens with pain in his hands and wrists; has been on Hydrocodone, muscle relaxers, and anti-inflammatories; denies any radicular pain; and rates the pain as severe.[43] The examination revealed markedly decreased range of motion in all planes in the thoracic and lumbar spine and there was full range of motion without pain of the joints of the lower extremities including a negative Patrick's test for hip pathology; there was tenderness to palpation of the thoracic and lumbar-sacral spine and para-spinal regions, but no palpable myofascial trigger points in the paraspinal regions; no significant kyphotic or hyper-lordotic or gross scoliotic deformity was noted nor was there abnormal swelling or asymmetry of thoracic and lumber spine areas noted; and straight leg and crossed straight leg testing were negative bilaterally.[44] Dr. Schlesinger found normal 5/5 strength and function in bilateral proximal and distal muscles of upper and lower extremities; no atrophy or

---

[40]Tr. 122.

[41]Tr. 123-125.

[42]Tr. 126.

[43]Id.

[44]Tr. 126-127.

fasciculations seen; normal muscle tone with no spasticity and no rigidity; normal fine motor movements and function of hands and feet; and no sensory dysfunction of the face, trunk, or extremities.[45] The deep tendon reflexes were symmetric and there was no abnormalities with pathologic reflexes; however, the gait was antalgic.[46] Dorsal pedal pulses, skin temperature, and color of distal lower extremities were normal and no edema was noted.[47] Cranial nerve and cerebellar functions were normal as was Plaintiff general appearance.[48] The doctor found that the MRIs of the thoracic showed no abnormalities; the lumbar showed minimal bulging discs of the lower two discs. He also concluded that there was no significant disc herniation, nerve root compression, spinal stenosis, or foraminal stenosis; and no abnormal signal in the cord of nerve tissue.[49] He opined that Plaintiff's symptoms were musculoskeletal in nature and the doctor did not see any structural abnormalities that he could help with directly.[50] The doctor noted that Plaintiff did inquire about disability; he prescribed physical therapy and pain management.[51]

Dr. R.W. Beard reviewed the evidence in Plaintiff's file on March 19, 2004, and found the following exertional limitations: occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and occasionally

---

[45]Tr. 127.

[46]Id.

[47]Id.

[48]Tr. 128.

[49]Id.

[50]Tr. 129.

[51]Id.

stooping and crouching; there were no limitations as to push and/or pull, climbing, balancing, kneeling, crawling, handling and feeling, and environmental.[52] Under symptoms, Dr. Beard had circled "[t]he symptom(s) is attributable, in your judgment, to a medically determinable impairment" and "[t]he severity of the symptom(s) and its alleged effect on function is consistent, in your judgment, with the total medical and nonmedical evidence, including statements by the claimant and other, observations regarding activities of daily living, and alterations of usual behavior or habits."[53] This report was reviewed on July 2, 2004, by Dr. Jerry Thompson and affirmed.[54]

The final medical records are of Plaintiff's April 11, 2005 visit to Dr. Horan because of a cough and some shortness of breath -- especially in the morning.[55] The notes reflect that Plaintiff is a heavy smoker and has chronic lumbar back pain; the 2003 MRI showed some mild disc protrusion, but not much else; and he had been quite expressive about the back pain.[56] The examination showed the extremities with no clubbing, cyanosis, or edema and he had negative leg raises.[57] The assessment was chronic bronchitis and chronic lumbar back pain and Plaintiff was given a prescription for Ultram.[58]

---

[52]Tr. 136-139.

[53]Tr. 140.

[54]Tr. 142.

[55]Tr. 147.

[56]Id.

[57]Id.

[58]Id.

In the May 16, 2005 responses to interrogatories posed by the ALJ, the VE assumed a hypothetical person of the Plaintiff's age, education and with the same work history who can occasionally lift/carry 20 pounds and frequently 10, can stand/walk 6 hours during a workday, can sit 6 hours, can occasionally stoop and crouch, and no other limitations in responding that such a person could not return to his past work, but could do the jobs of assembler, production; sales attendant, self service store; and poultry processing laborer with the number of each in the local, regional and national economies.[59] In a second hypothetical, the same person suffered from chronic pain and fatigue; can lift less than 10 pounds; cannot sit or stand for more than 30 minutes at a time; would require frequent, lengthy and unscheduled breaks with the result that the total time the person could sit, stand and walk would be less than 8 hours in a business day. The VE answered that such a person could not return to past work and there were no jobs in the economy that this person could do.[60]

**IV. The Commissioner's Final Decision**

Plaintiff had the burden of proving his disability by establishing a physical or mental impairment lasting at least one year that prevents him from engaging in any substantial gainful activity.[61] The ALJ undertook the familiar five-step analysis in determining whether Plaintiff was disabled.[62] The ALJ found that Plaintiff had not engaged in substantial gainful activity since the

---

[59]Tr. 111-112.

[60]Tr. 112.

[61]42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); Baker v. Apfel, 159 F.3d 1140, 1143 (8th Cir. 1998); Ingram v. Chater, 107 F.3d 598, 601 (8th Cir. 1997).

[62]The five-step sequential evaluation is as follows: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether he or she has a severe and medically determinable physical or mental impairment; (3) whether the claimant may be deemed disabled

alleged onset of disability.[63] He reviewed the medical evidence in the record.[64] The ALJ found that Plaintiff had severe impairments of back problems and arthritis, but that none of them were severe enough to meet or be medically equivalent to an impairment listed in Appendix 1, Subpart P, Regulations No. 4.[65]

The ALJ evaluated Plaintiff's subjective allegations and complaints using the criteria set forth in Polaski v. Heckler.[66] He found Plaintiff's subjective allegations not to be totally credible.[67] The ALJ found that Plaintiff could not perform his PRW, but has the RFC to perform a significant range of light work.[68] Relying on the Medical-Vocational Guidelines and the interrogatory responses of the VE, the ALJ concluded that, considering Plaintiff's age, education, PRW, and RFC, Plaintiff is capable of other work that exists in significant numbers in the national economy such as assembler

---

because the impairment meets or equals a listed impairment in Appendix 1 to Subpart P, Title 20, Code of Federal Regulations; (4) whether the claimant is able to return to past relevant work, despite the impairment; and if not (5) whether the claimant can perform any other kind of work. 20 C. F. R. §§ 416.920 and 404.1520. See Cox v. Barnhart, 345 F.3d 606 , 608 n.1 (8th Cir. 2003).

[63]Tr. 17.

[64]Tr. 13-14.

[65]Tr. 14, 17.

[66]These include the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

[67]Tr. 17.

[68]Tr. 16-17.

in production, self-service sales attendant, and poultry processing laborer.[69] Therefore, the ALJ found that Plaintiff is not disabled.[70]

**V. Standard of Review**

The Court's function on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.

> Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. In determining whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because we would have decided the case differently.[71]

**VI. Plaintiff's Arguments**

Plaintiff contends that the ALJ committed error when he identified only the results of the thoracic MRI in his decision, which were essentially normal, but failed to recite the results of the lumbar MRI which noted the existence of a disc herniation and an annular tear and disc protrusion in the Plaintiff's back. He also asserts that Dr. Schlesinger's report verified the truthfulness and credibility of Plaintiff's complaints about his back pain and the ALJ summarized some of the hearing testimony of Plaintiff and his wife regarding attempts to work and pain. Plaintiff argues that the ALJ's statement regarding certain items in the Disability Supplemental Interview Outline completed by Plaintiff are not what is really reflected in the form as Plaintiff does not shop for clothes; does not go to the post office; can do bank transactions in a drive though and pay bills when

---

[69] Tr. 16.

[70] Tr. 16, 18.

[71] Roberts v. Apfel, 222 F.3d 466, 468 (8th Cir. 2000) (citations omitted).

he does not have to walk much; does not prepare meals except sandwiches and frozen dinners when alone at home; takes longer to prepare meals; can drive including on unfamiliar routes but only for short periods of time; uses crutches; and does not watch television, play games or visit friends and relatives much.

Plaintiff complains that the March 19, 2004 Physical Residual Capacity Assessment by Dr. R.W. Beard, who never saw Plaintiff, acknowledged that Plaintiff was credible, yet the ALJ stated that Dr. Beard said Plaintiff could perform light work as the light exertional level. Plaintiff further asserts that the ALJ did not state what additional exertional and/or non-exertional limitations exist in the Plaintiff's case in his discussion of whether the Plaintiff has the ability to perform the requirements of light work. Regarding the VE's interrogatory responses, Plaintiff argues, despite the ALJ's intention for Plaintiff's RFC to be a significant range of light work, that the VE listed jobs of assembler of production and self-service store sales attendant that are medium weight jobs, there is no listing for a poultry processing laborer although various poultry processing jobs range from light work to heavy work, and so the ALJ's reliance on the VE's evidence is invalid. Finally, Plaintiff contends that the ALJ did not mention the second hypothetical posed to the VE to which he responded that there were no jobs that the hypothetical person could do.

**VII. Discussion**

The Commissioner's response that the ALJ did not err by not mentioning the abnormal findings on the lumbar MRI while discussing the thoracic MRI is correct. "Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered."[72] As pointed

[72] Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000).

out by the Commissioner, the ALJ's summary shows that the MRI was reviewed and the findings of the lumbar MRI described only slight abnormalities. When Dr. Schlesinger reviewed the MRI report, he stated that the lumbar MRI showed minimal bulging discs. The Court cannot find that Dr. Schlesinger's report "verified the truthfulness and credibility of Plaintiff's complaints about his back pain." Although the doctor noted Plaintiff's complaints of pain, found certain limitations upon physical examination and review of the MRIs, and observed an antalgic gait, the report reflects numerous normal findings.

The Commissioner is also correct in pointing out that the ALJ's discussion of Plaintiff's activities are based on the outlines that Plaintiff had filled out, the ALJ summarized the testimony of Plaintiff and his wife regarding his activities, and the ALJ specifically mentioned Plaintiff's testimony regarding crutches. "It is for the ALJ as trier of fact to give the testimony of family members and friends such credence as he deems warranted."[73]

I find that the ALJ made a proper credibility analysis.[74] An ALJ may discredit subjective complaints of pain if they are inconsistent with the record as a whole.[75] The ALJ's decision reviewed the objective findings in the medical evidence compared to the testimony of Plaintiff and his wife as to his limitations.

> Tucker complained of severe impairments due to back and leg pain. However, a number of diagnostic tools, including an MRI, myelogram, and post-myelogram CT, showed relatively minor degenerative changes. Additionally, Tucker's treating physicians did not place any restrictions on him despite the alleged severity of the pain. The medical expert similarly testified that Tucker should be medically able to

---

[73]Kisling v. Chater, 105 F.3d 1255, 1258 (8th Cir. 1991).

[74]See, Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (ALJ not required to discuss each Polaski factor as long as analytical framework is recognized and considered).

[75]Barry v. Shalala, 885 F.Supp. 1224, 1225 (N.D. Iowa 1995).

> perform sedentary work that allowed for frequent postural changes and required only seldom stair climbing or bending. This evidence caused the ALJ to question Tucker's credibility. Despite the ALJ's concerns about Tucker's credibility, he did not entirely ignore Tucker's complaints but instead balanced Tucker's subjective complaints against the objective medical evidence in arriving at an assessment of Tucker's RFC. Accordingly, we conclude that the ALJ's credibility determination is supported by substantial evidence in the record as a whole.[76]

In addition, the ALJ discussed Plaintiff's daily activities, the medications prescribed, and the testimony of Plaintiff and his wife as to Plaintiff's pain. Regarding Plaintiff's argument that the State agency physicians found him to be credible, the Commissioner has pointed out that their findings as to what limitations Plaintiff had do not reflect an opinion that he was precluded from performing any work.

The ALJ made clear what were the exertional and/or non-exertional limitations of Plaintiff through the interrogatories posed to the VE. Plaintiff's argument that the VE relied upon jobs in a higher exertional category than the limitations posed by the ALJ is without merit. The Commissioner's response attachments from the 1991 edition of the DOT[77] show that the assembler job and self-serve sales attendant jobs identified by the VE are categorized as light work.

Finally, I find no error in the ALJ's failure to mention the second hypothetical answered by the VE. "A hypothetical question, however, need only include impairments that are supported by the record and which the ALJ accepts as valid."[78] A properly phrased hypothetical question, as posed by the ALJ here, constitutes substantial evidence.[79]

---

[76]Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004).

[77]U.S. Dept. Of Labor, Dictionary of Occupational Titles.

[78]McKinney v. Apfel, 228 F.3d 860, 865 (8th Cir. 2000).

[79]Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999).

**VIII. Conclusion**

After careful consideration of the record as a whole, the ALJ's decision was supported by substantial evidence and is AFFIRMED.

IT IS SO ORDERED this 26th day of September, 2007.

/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE